## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                :
S.B., though his parents A.B.     :
Sh.B., *et al.*,             :
                :
        Plaintiffs,  :       Civ. No.: 13-949(FLW)(LHG)
                :
        v.           :       **OPINION**
                :
TRENTON SCHOOL DISTRICT,  :
*et al.*,             :
                :
        Defendant.  :
                :
_____:

### WOLFSON, United States District Judge:

      This matter arises out of a Complaint filed by Plaintiffs S.B., through his parents A.B. and Sh.B, as well as A.B. and Sh.B individually (collectively, "Plaintiffs'"), alleging violations of the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400, *et. seq.*, Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132, *et seq.*, § 504 of the Rehabilitation Act of 1973 ("§ 504" or the "RA"), 29 U.S.C. § 784, the Fourteenth Amendment of the United States Constitution, through 42 U.S.C. § 1983, as well as several New Jersey constitutional and statutory claims.[1] Defendants New Jersey Department of Education ("NJDOE"), New Jersey Office of Special Education ("OSEP"), New Jersey Department of Health ("DOH"), and New

_____

[1]    This Court has federal question subject matter jurisdiction over the federal law claims and supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States); 28 U.S.C. § 1343(a)(3).

Jersey Division of Family Health Services ("DFHS") (collectively, "State Defendants") filed a motion to dismiss the Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and/or failure to state a claim upon which relief can be granted under Rule 12(b)(6). Defendant Trenton Board of Education (the "District")[2] filed a letter joining in the State Defendants' motion to dismiss with respect to Counts One and Four through Seven of the Complaint. For the reasons that follow, the State Defendants' motion is granted, and the District's motion is denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

Plaintiff S.B. is a twelve-year-old boy that resides with his parents, A.B. and Sh.B., in the City of Trenton, New Jersey. Compl., ¶ 1. At birth, S.B. was diagnosed with Proteus Syndrome, a congenital disorder that causes vascular malformations, lymphedema, and hypertrophy of his trunk, hands, fingers, arms, and feet. *Id.* at ¶ 16. Due to his disabilities, S.B. has suffered chronic pain from his vascular malformations, drainage from the lymphedema, and extra weight caused by the enlarged extremities and trunk. *Id.* at ¶ 18. In addition, S.B. suffers from severe asthma. *Id.* at ¶¶ 17-18. In an effort to combat the ailments, S.B. is prescribed a large number of medications to treat his pain and asthma. *Id.* at ¶ 19.

Because of these disabilities, since birth, S.B. qualified and continues to qualify for certain special services. *See id.* at ¶ 37. Specifically, Plaintiffs were entitled to Early Intervention Services ("EIS") up until S.B.'s third birthday; however, S.B.'s parents, A.B. and Sh.B., were never contacted or otherwise advised of this, and S.B. received no

<hr/>

[2]    Defendant Trenton Board of Education was improperly pled as "Trenton School District" in the Complaint.

[3]    The following facts are taken from Plaintiffs' Complaint and, for the purposes of the instant motion, are assumed to be true unless otherwise noted.

EIS.  *Id.* at ¶ 24.  In regard to S.B.'s education, the Complaint is replete with allegations of endemic failures, which spanned more than a decade, to provide educational and related services to S.B.  *See Id.* at ¶¶ 24-68.  For example, after the age of three, Plaintiffs were not made aware of the educational services available through the Child Find program.  *Id.* at ¶ 26.  Instead, the first contact between Plaintiffs and any of the Defendants occurred in July 2004, when Plaintiffs contacted the District about registering S.B. for kindergarten for the 2005-2006 school year.  *Id.* at ¶ 28.  In October 2004, three District representatives visited Plaintiffs' home to discuss S.B.'s medical condition and appropriate educational placement.  *Id.* at ¶ 30.  As a result of the visit, the representatives determined that S.B. would begin to receive home instruction immediately; however, S.B. did not receive any home instruction services.  *Id.* at ¶¶ 31-32.  Sh.B. eventually contacted a District social worker to inquire about kindergarten placement, which resulted in S.B. being placed in the Parker Annex School.  *Id.* at ¶¶ 33-34.  S.B. regularly attended the school initially, but ceased his attendance after becoming ill.  *Id.* at ¶ 35.  In response to the illness, in October 2005, the District held a meeting at which Plaintiffs authorized the District to evaluate S.B. for special education.  *Id.* at ¶ 36.  After the evaluation of an occupational therapist, physical therapist, social worker, and neuropsychologist, the District concluded that S.B. was eligible for the available special education and related services.  *Id.* at  37

Subsequently, in January 2006, S.B. was accepted into the Cappello School ("Cappello"), which caters to special needs children.  *Id.* at ¶ 38.  Prior to his attendance at Cappello, Plaintiffs met with District Defendants to develop an Individual Education Program ("IEP"), which provided for home instruction until S.B. started at the school;

however, as before, S.B. never received any home instruction.  *Id.* at ¶¶ 39-41.  On the first day of school at Cappello, S.B.'s aide ignored Plaintiffs' explicit instruction not to touch S.B.'s food or to assist him in going to the bathroom, which lapses evoked a hysterical reaction by S.B.  *Id.* at 42.  Because of the failure to follow these instructions, Plaintiffs did not trust that Cappello could adequately manage S.B.'s conditions and immediately withdrew S.B. from school.[4]  *Id.* at ¶ 43.  In reaction to the withdrawal, Plaintiffs requested that the District find a more suitable school; their requests went unanswered. *Id.* at ¶ 44.

Over the next three years, Plaintiffs made a concerted, continuous attempt to contact the District to inquire about S.B.'s educational placement.  *Id.* at ¶ 48.  On several occasions, Sh.B. traveled to the District's Monument School in an attempt to enroll S.B. *Id.* at ¶ 49.  Despite such efforts, S.B. did not receive any special education and related services during this time; rather, he remained at home with his only contact being that of his immediate family members and a few neighborhood children.  *Id.* at ¶ 50.

In May 2009, Sh.B. spoke to Richard Rivera ("Rivera"), a Child Study Team Social Worker for the District, about registering S.B. for school.  *Id.* at ¶ 51.  Later that month at an IEP meeting, Defendants determined that S.B. had not been in a regular educational program for almost four years.  *Id.* at ¶ 54.  However, the IEP incorrectly stated that S.B. was receiving home instruction.[5]  *Id.* at ¶ 55.  Eventually, S.B. did receive

---

[4]     In an evaluation completed in 2012, Defendant Social Worker, Mittie B. White ("White") reported that she believed Plaintiffs' decision to withdraw S.B. from Cappello School was justified because, in her opinion, the school's staff would not know how to handle S.B.'s chronic pain or other related conditions.  *Id.* at ¶¶ 66-67.
[5]     Furthermore, the IEP incorrectly stated that "[S.B.] is a hard-working student who does not present any behavior problem in the classroom.  [S.B.] has shown improvement

home instruction, but it lasted only three weeks because the instructor failed to return.  *Id.* at ¶ 56.

At the begin of the 2009-2010 school year, S.B. was scheduled to be retested to determine his educational level and find suitable placement, but Plaintiffs were forced to reschedule because S.B. became ill.  *Id.* at ¶¶ 57-58.  Defendants never contacted Plaintiffs, and the test was never rescheduled.  *Id.* at ¶ 58.  Instead, Sh.B. spent the next two years attempting to contact Rivera and other District representatives, but her efforts were unsuccessful.  *Id.* at ¶¶ 59-60.  As a result, S.B. received no education or related services from the ages of nine to eleven, and he remained at home with minimal contact with others.  *Id.* ¶ 60.

In November 2011, pertaining to an unrelated matter, the New Jersey Division of Family and Youth Services ("DYFS") was called to Plaintiffs' home.  *Id.* at ¶ 61.  After inquiring about S.B., DYFS learned that S.B. had received almost no formal education.  *Id.* at ¶ 62.  As a result of DYFS' intervention, two representatives of the District contacted Sh.B and thereafter S.B. was registered for school in February 2012.  *Id.* at ¶¶ 63-64.  A new IEP meeting was held in March 2012.  *Id.* at ¶ 65.  The documentation from the meeting states that S.B. had not been evaluated since 2006 and never attended a formal school program.  *Id.*  In that connection, in a document entitled "Rationale and Support for Home Instruction," dated March 14, 2012, the District noted that as a result of S.B.'s lack of education, his "academic skills are pre-k[indergarten]  or below even though he is a 5th grader as per his age."  *Id.* at ¶ 68.  Following the IEP meeting, sometime in March 2012, S.B. began to receive ten hours per week of home instruction.

---

but still needs reinforcement in reading and math.  [S.B.] enjoys all hands on approach activities, which requires him to continue to work with his hands daily."  *Id.* at ¶¶ 52-55.

*Id.* at ¶ 69.  In late June 2012, S.B.'s home instruction teacher issued a grade report that indicated that S.B. was working at a kindergarten level.  *Id.* at ¶ 71.

In August 2012, another IEP meeting was held at which Sh.B., A.B., S.B.'s educational advocate, S.B.'s attorney, and a District representative were present.[6]  *Id* at ¶ 74.  All parties concluded that S.B. would have his home instruction increased to fifteen hours per week, educational material would be authorized for his home instruction, and a neuropsychological examination would be conducted.  *Id.* at ¶ 75.

In early September 2012, Neuropsychology Associates of New Jersey examined S.B. and concluded:

> [T]he cognitive deficits that this youngster manifests are likely due, in large part, to his total lack of formal educational experiences . . . [S.B.]'s cognitive impairment is less due to innate limitations and more do [*sic*] to his total lack of formal educational experiences. Had he been appropriately educated in a normal timeline, it is likely that his cognitive functions and intelligence would be largely normal.

*Id*. at ¶ 76.

As of December 2012, an IEP was signed authorizing S.B. to attend the Kingsway Learning Center. *Id.* at ¶ 78.  Plaintiffs have not since challenged, before the District or in an administrative due process hearing, whether S.B. is currently receiving all necessary educational and related services under the IDEA.  *See id.* at ¶ 79.  It is on these facts that Plaintiffs base their Complaint, which was filed on February 15, 2013, against State Defendants and the District.

---

[6]     Previously, on June 21, 2012, the District held an IEP meeting without Plaintiffs' presence or notification.  *Id.* at ¶ 72.  In August 2012, a District representative went to Plaintiffs' home to request a signature on the IEP; however, Plaintiffs refused to sign because they had not been involved in the decision-making. *Id.* at ¶ 73.

## II.    STANDARD OF REVIEW

In the instant matter, State Defendants move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction under the Federal Rules of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot."  *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993).

### A.    Rule 12(b)(1)

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). There is no presumption of truthfulness that attaches to the allegations of the complaint when determining a challenge to the court's subject matter jurisdiction.  *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Once a 12(b)(1) challenge is raised, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction.  *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).  In that connection, a Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction."  *Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff."  *Id.*  Under a factual attack, however, "the challenge is to the actual alleged jurisdictional facts."  *Liafom, LLC. v. Big Fresh Pictures*, Civ. No. 10-0606, 2011 WL 3841323 (D.N.J. Aug. 24, 2011).  In

the instant matter, State Defendants do not challenge the alleged jurisdictional facts. Rather, State Defendants argue that this Court lacks subject matter jurisdiction because Plaintiffs failed to plead that they exhausted their administrative remedies, *see* Def. Br., 15, which challenges the legal sufficiency of the claim. Thus, State Defendants have launched a facial attack.

### B.    Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a claim for failing to state a basis upon which relief can be granted. In deciding a Rule 12(b)(6) motion, "courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). However, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleading must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotations omitted). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, as accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (quoting *Twombly,* 550 U.S. at 570) (internal citations and quotations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.    DISCUSSION

Prior to the legal analysis, this Court must address the current procedural posture

of this case. Plaintiffs' Complaint contains seven counts against both State Defendants and the District. Following the State Defendants' motion to dismiss, Plaintiffs voluntarily dismissed, as to State Defendants only, Count One, violation of the IDEA, Count Four, violation of the Fourteenth Amendment, and the New Jersey state constitution and statutory claims in Counts Five through Seven. Plaintiffs continue to press their claims against State Defendants for violation of the ADA and RA, in Counts Two and Three, respectively.[7]

After State Defendants filed their motion to dismiss, the District filed a letter with the Court seeking to join State Defendants' motion with respect to Counts One and Four through Seven of the Complaint. *See* Dkt. No. 20. In that regard, the District contends that because Plaintiffs voluntarily dismissed these Counts as to State Defendants, the Court should order that these Counts are dismissed as to the District as well.[8] State Defendants, however, have made a concerted effort to separate themselves from the District. In the motion to dismiss and its accompanying briefings, State Defendants have expressly asserted that the District performs different functions, and therefore, claims made against the District should not be viewed and analyzed in the same way as claims made against State Defendants. Indeed, the law supports the conclusion that the District is a distinct local entity that has different responsibilities, and it performs different

---

[7]     Because of this, it is not necessary to address State Defendants' sovereign immunity defense in the instant motion. State Defendants only raised sovereign immunity in their moving brief with respect to Count One and Counts Four through Seven. *See* Def. Br., 11. Indeed, State Defendants do not challenge Plaintiffs' ADA and RA claims on immunity grounds, only that S.B. was not denied any benefits by State Defendants. *See id.* at 31 n.4.

[8]     The District further informed the Court that it did not join, and was taking no position with respect to, State Defendants' arguments seeking to dismiss Counts Two and Three of the Complaint, but instead reserved the right to raise similar affirmative defenses in its own motion.

functions, in providing special education services than its State counterparts. *See Grieco v. New Jersey Dept. of Educ.*, Civ. No. 06-4077, 2007 WL 1876498, *11-*12 (D.N.J. June 27, 2007) (reasoning that the "real party in interest" was the Jefferson Township School District, Jefferson Township Board of Education and various individual defendants, not the New Jersey Department of Education). Moreover, State Defendants' motion to dismiss is highly fact-specific to them, based primarily on the argument that Plaintiffs' Complaint fails to set forth allegations sufficiently directed at State Defendants' role and actions with respect to the claims in the Complaint. Indeed, one of State Defendants' positions is that the District, and not State Defendants, is the proper defendant for Plaintiffs' claims. It thus would be inappropriate to allow the District to join in State Defendants' motion to dismiss, given the fact-sensitive nature of State Defendants' motion. Finally, in their opposition to State Defendants' motion, Plaintiffs made clear that they were voluntarily dismissing certain Counts of the Complaint as to State Defendants' only. For these reasons, I will not consider State Defendants' motion to dismiss, and Plaintiffs' voluntary dismissals of certain Counts, as pertaining to the District as well.[9]

## A. Administrative Exhaustion

State Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' ADA and § 504 claims because Plaintiffs failed to exhaust their administrative

---

[9] Nevertheless, I take note of one of Plaintiffs' primary arguments vis-à-vis State Defendants that may make Plaintiffs' claims against the District problematic. As discussed in more detail in the ensuing discussion, Plaintiffs contend that they are not seeking compensatory education or other remedies typically available under the IDEA, and that they similarly do not contest that all Defendants are currently providing S.B. with the necessary services under the IDEA. *See* Compl., ¶ 79. Such concessions may make it difficult for Plaintiffs to state a claim against the District under the IDEA.

remedies before bringing the instant suit.  In that connection, State Defendants make a two-fold argument: (1) Plaintiffs' ADA and § 504 claims are merely a recasting of their IDEA claim, and thus the IDEA's administrative exhaustion requirement still governs; and (2) Plaintiffs' claims do not fall within any of the exceptions to exhaustion under the IDEA.  Plaintiffs respond that their ADA and § 504 claims, although based on the same conduct, are not the same as their IDEA claim in that they are not seeking compensatory education.  Instead, Plaintiffs contend that they seek monetary damages—compensatory and punitive—under the ADA and § 504 for Defendants' (1) failure to provide S.B. with access to Defendants' services, (2) failure to make reasonable modifications in policies, and (3) intentional and deliberate discrimination of S.B. because of his disability, none of which are a remedy under the IDEA.

The Third Circuit has recently explained that "[t]he IDEA governs the affirmative duty to provide a public education to disabled students, while the ADA and RA embody the negative prohibition against depriving disabled students of public education."  *CG v Pennsylvania Dep't of Educ.*, No. 12-3747, 2013 WL 5912054, at *2 (3d. Cir., Nov. 5 2013).  Thus, "compliance with the IDEA does not automatically immunize a party from liability under the ADA or RA."  *Id.* at *3.

With that in mind, I note that, in general, "[n]either Title II of the ADA nor the Rehabilitation Act include a requirement that plaintiff exhaust his or her administrative remedies before filing suit in federal court." *Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 486-487 (E.D. Pa. 2004); *see also, Saylor v. Ridge*, 989 F. Supp. 680, 685-686 (E.D. Pa. 1998 ("[T]here is no [ADA] requirement that administrative remedies first be exhausted before suit may be commenced"); *Freed v. Consolidated Rail Corp.*, 201 F.3d

188, 190 (3d Cir. 2000) ("[S]ection 504 plaintiffs may proceed directly to court without pursing administrative remedies"). However, in the context of ADA and RA claims based on the same conduct as a claim under the IDEA, a party is still required to abide by the normal exhaustion requirements. 20 U.S.C. § 1415(*l*).

Here, although Plaintiffs' ADA and § 504 claims are premised on some of the same conduct as their IDEA claim, Plaintiffs are not seeking the same remedy—compensatory education—under each of these claims as State Defendants contend. Plaintiffs have pled and repeatedly emphasized in their papers that their ADA and RA claims are not premised on compensatory education and related services under the IDEA, but instead are based on Defendants' failure to provide S.B. with the necessary and required services and accommodations due to him under the ADA, and for having intentionally discriminated against him under the RA. *See, e.g.*, Pl. Opp., 15 (claiming that "there is no need for any IDEA equitable relief on a going forward basis, only money damages to compensate for the continuing violations of the ADA and Section 504"); *id.* at 20 (explaining that Plaintiffs seek "tort-like money damages not available under the IDEA"). In that connection, Plaintiffs argue that they are not required to exhaust administrative remedies because compensatory monetary damages, as opposed to compensation for educational expenses, are not available under the IDEA. *See Smith v. City of Philadelphia*, 345 F. Supp. 2d 482, 486 (E.D. Pa. 2004) (exhaustion is not required under the IDEA where the relief sought is unavailable in an administrative proceeding); *Jeremy H. by* Hunter, 95 F.3d at 281; *see also, Freed v. Consol. Rail Corp.*, 201 F.3d 188, 191-194 (3d Cir. 2000).

Indeed, the Third Circuit has held that "compensatory and punitive damages are

not an available remedy under the IDEA," *Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.*, 587 F.3d 176, 186 (3d Cir. 2009), but "compensatory damages, including monetary damages, are available for violations of the ADA and Section 504."[10] *A.W. v. Jersey City Public Sch.,* 486 F.3d 791, 804 (3d Cir.2007) (en banc); *see also Davie v. Barnegat Bd. Of Education*, No. 9-5769, 2010 WL 1186273 (D.N.J. Mar. 24, 2010). Because Plaintiffs seek compensatory and punitive monetary damages for their ADA and RA claims, Plaintiffs were not required to exhaust their administrative remedies, and thus this Court has jurisdiction over State Defendants.

### B.    Failure to State a Claim

State Defendants move to dismiss Plaintiffs' ADA and § 504 causes of action on the ground that Plaintiffs have failed to allege facts plausibly stating a claim against State Defendants.[11] In support, State Defendants point out that all factual allegations in the Complaint reference the District and its representatives, and not any State Defendants or their representatives, and thus there are no allegations that State Defendants ever denied Plaintiffs any benefits, services, or accommodations required by the ADA or § 504. Moreover, State Defendants argue that Plaintiffs fail to allege that State Defendants knew or should have known of S.B.'s condition or any potential wrongdoing on the District's

---

[10]    State Defendants rely heavily on a non-precedential opinion, *Woodruff v. Hamilton Twp. Public Schools,* which held that the plaintiffs' IDEA, RA, and ADA claims were properly dismissed for failure to exhaust administrative remedies. 305 Fed. App'x 833, 837 (3d Cir. 2009). In *Woodruff*, however, the district court treated the plaintiffs' claim for relief as the same under their IDEA, RA, and ADA claims, and thus the court on appeal similarly determined that the plaintiffs' "request for money damages presumably includes reimbursement for the years of private school tuition they incurred," which is an available remedy under the IDEA. *See id.* In contrast, Plaintiffs here are seeking compensatory and punitive monetary damages for violations of the ADA and RA, not reimbursement for out-of-pocket education expenses.

[11]    As explained in more detail *infra*, Part III.C., I address State Defendants' failure to state a claim argument before reaching their statute of limitations defense.

part. In response, Plaintiffs contend that they have sufficiently alleged facts to show that they were denied rights and benefits due to them based on S.B.'s disability, and that there is no requirement to show that State Defendants had "specific knowledge" of S.B.'s disability.

To prove a claim under the ADA or § 504, Plaintiffs must show that S.B.: (1) is disabled under the statutes; (2) is otherwise qualified to participate in the program at issue, *i.e.*, public education; and (3) was precluded from receiving a public education and/or a service or benefit because of his disability. *CG v Pennsylvania Dep't of Educ.*, 2013 WL 5912054, at *3. With respect to causation, under § 504, the alleged discrimination must be the sole reason for S.B. being deprived of education and other benefits, whereas the ADA claim will stand even if there is another reason for the alleged discrimination. *Id.* at *3 & n.11.

It is entirely unclear from the Complaint upon what facts Plaintiffs base their claims against State Defendants for alleged violations the ADA or § 504. The Complaint states virtually no facts pertaining to the conduct of the State Defendants; almost of the all allegations are directed at the District's conduct or responsibilities and based on S.B.'s failure to receive a free and appropriate education ("FAPE") and related services and benefits.[12] In neither their ADA or § 504 claim do Plaintiffs allege any specific wrongdoing by State Defendants. Rather, these claims contain only generalized allegations that are nothing more than mere recitations of the law or conclusions

---

[12] For example, Plaintiffs allege that "Plaintiff Sh.B. was advised by *Defendant District representatives* that starting immediately Plaintiff S.B. would receive Home Instruction." Compl. ¶ 31 (emphasis added); *see also id.* at ¶ 37 ("Plaintiff S.B. was evaluated by *Defendant District's* occupational therapist, physical therapist social worker, and neuropsychologist . . . ." (Emphasis added.)).

unsupported by any factual allegations, such as, "Defendants' actions violated Section 504;" these are insufficient to state a claim.[13] The *only* factual allegations that do not pertain to the District deal with the DYFS representatives' visit to Plaintiffs' home in November 2011. Compl., ¶ 63. The Complaint, however, merely recites that DYFS caused the District—and not State Defendants—to be alerted of S.B.'s situation, not that DYFS failed to provided Plaintiffs with any services under the ADA or § 504. *See id.* These scant facts with respect to DYFS do not establish what role DYFS, let alone State Defendants, may have had in the alleged violations of the ADA or § 504. Similarly, Plaintiffs fail to allege how State Defendants knew or should have known of S.B.'s disability and, more importantly, the alleged discrimination, *e.g.*, his failure to receive a FAPE. Without such allegation, Plaintiffs cannot make out a *prima facie* case of discrimination on the part of State Defendants. *CG v. Pennsylvania Dep't of Educ.*, 2013 WL 5912054, at *3; *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380-81 (3d Cir. 1991). Because the majority of facts in the Complaint concern S.B.'s education and alleged violations of the IDEA, and because Plaintiffs do not dispute that it is the District, and not State Defendants, that provides the actual education and related services due to S.B. under the IDEA, it is unclear what conduct or obligations Plaintiffs rely on to

---

[13]    In their ADA claim, Plaintiffs claim, *inter alia*, that State Defendants "denied equal and equally effective access" to Plaintiffs; it "failed to make reasonable modifications in policies, practices and procedures for Plaintiff S.B." to avoid discrimination; and, its actions were intentional, willful, malicious and/or done with reckless disregard" for S.B.'s rights. Compl. ¶¶ 93-95. In their RA claim, Plaintiffs assert, *inter alia*, that "Defendants violated Section 504 [of the RA] and its regulations by intentionally and deliberately discriminating against Plaintiffs on the basis" of S.B.'s disabilities; "Defendants had knowledge that harm to plaintiff S.B.'s federally protected right would be substantially likely if they withheld said services;" and, "Defendants' actions violated Section 504 [of the RA] and implementing regulations." *Id.* at ¶¶ 100-102. As noted above, I cannot discern how any of these claims are based on factual allegations pertaining to State Defendants' conduct.

support a claim against State Defendants for alleged discrimination under the ADA and RA. For these reasons, I find that Plaintiffs have failed to plead facts sufficient to defeat State Defendants' motion to dismiss, as there are simply not enough facts to plausibly show that State Defendants' violated the ADA or § 504. *See Iqbal*, 556 U.S. at 678.

Moreover, to the extent that Plaintiffs premise these claims on State Defendants' obligations under EIS, Plaintiffs have failed to show why those claims are not time-barred at least with respect to Plaintiffs A.B. and Sh.B. State Defendants were only obligated to provide Plaintiffs EIS until S.B. reached age three, in 2003. Plaintiffs never filed any administrative or civil complaint based on the alleged EIS violation until the instant Complaint, well outside the applicable two-year statute of limitation. *See infra, Part III.C.* There is also nothing in the Complaint to support a claim that State Defendants' alleged failure to provide EIS was part of the same pattern of the District Defendants' alleged failure to provide educational and related services. Indeed, as explained in more detail *infra*, Plaintiffs' continuing violation doctrine argument turns on allegations of ongoing and repeated failures of the District to provide S.B. a FAPE. Thus, there is no basis to toll the EIS violation under the continuing violation doctrine with respect to Plaintiffs A.B. and Sh.B.

In sum, Plaintiffs simply do not provide any facts to inculpate State Defendants, and so, even accepting all of Plaintiffs' allegations as true, I find that Plaintiffs did not present sufficient factual matter to state a claim that is plausible on its face against State Defendants for violations of the ADA or § 504 of the RA. Accordingly, Counts Two and Three of Plaintiffs Complaint are dismissed without prejudice with respect to State Defendants.

## C.    Statute of Limitations

Although I have already determined that Plaintiffs fail to meet the pleading standard under Rule 8(a) with respect to their claims against State Defendants, I nevertheless address certain aspects of State Defendants' statute of limitations argument and Plaintiffs' response in the interest of thoroughness and economy should Plaintiffs elect to replead their claims.   State Defendants argue, as a separate basis of their Rule 12(b)(6) motion, that Plaintiffs' ADA and RA claims are barred by a two-year statute of limitations to the extent that the claims are based on violations occurring before February 15, 2011, two years before Plaintiffs filed their Complaint.   Plaintiffs respond that any applicable statute of limitations should be tolled in the case under the continuing violation doctrine.

"The statute of limitations is an affirmative defense that must generally be pleaded and proved by the defendants." *Archie v. City of Newark*, No. 12-3657, 2012 WL 2476229, at *2 (D.N.J. June 27, 2012).   In the Third Circuit, a statute of limitations defense may be raised under Rule 12(b)(6), "but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 686 (E.D. Pa. 2011) (citing *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002)).   It must be "clear, *from the face of the complaint*, that the claim is barred by the statute of limitations." *Id.* (Emphasis added.).

With respect to Plaintiffs' claims under the ADA and the RA, State Defendants are correct that "the most appropriate limitations period is the state's applicable personal injury statute of limitations." *Muha v. Rutgers, State Univ. of New Jersey*, No. 8-2142,

2009 WL 689738 at *3 (D.N.J. Mar. 11, 2009) (applying New Jersey statute of limitations to ADA and RA claims); *see also Foster v. Morris*, 208 F. App'x 174, 177 (3d Cir. 2006) (applying Pennsylvania statute of limitations to ADA claim); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) ("[W]hen a federal law provides the basis for the cause of action, but fails to supply a statute of limitations, we must borrow an appropriate statute of limitations from the law of the forum state."). In addition to borrowing the state's statute of limitations, I also must "incorporate relevant state tolling rules." *Wesi-Buy Servs.*, 411 F.3d at 422. In New Jersey, the statute of limitations for personal injury claims is two years, N.J. Stat. Ann. 2A:14-2, with the date of accrual for a claim triggered "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Toney v. U.S. Healthcare, Inc.,* 840 F. Supp. 357, 359 (E.D. Pa. 1993) (citations omitted). However, New Jersey also provides statutory tolling of the statute of limitations for a minor's personal injury claims until the minor reaches the age of eighteen or becomes emancipated. N.J. Stat. Ann. 2A:14-21; *cf. Woodruff ex rel. B.W. v. Hamilton Tp. Public Schools*, Civ. No 06-3815(NLH), 2007 WL 4556968, at *5 n.5 (D.N.J. Dec. 20, 2007) (explaining that statute of limitations did not apply to NJLAD claims brought by parents on behalf of their minor child until child reached age of majority) (citing *Harris-Thomas v. Christina School Dist.*, 145 Fed. App'x 714, 715 (3d Cir. 2005).

As an initial matter, although State Defendants argue that Plaintiffs' claims are time-barred, they do not address the fact that the alleged violations of the ADA and § 504 occurred while Plaintiff S.B. was a minor child, and that as of the filing of the Complaint S.B. had not yet reached age eighteen. This alone would be sufficient to defeat State

Defendants' statute of limitation defense as to the minor Plaintiff S.B. because it is not clear, from the face of the complaint, that the claim is barred by the statute of limitations.[14]  *See Robinson v. Johnson*, 313 F.3d at 134.

Nevertheless, to the extent that Plaintiffs A.B. and Sh.B., are raising ADA and § 504 claims on their own behalf, and not that of their minor child Plaintiff S.B., those claims would not necessarily be tolled.[15]  In that connection, it is uncontested that the vast majority of the alleged violations underlying each of Plaintiffs' claims occurred before February 15, 2011.  Plaintiffs do not dispute that these violations fall outside the two-year statutory bar, but nevertheless argue that the facts supporting the ADA and § 504 violations fit within the continuing violation doctrine.

The continuing violation doctrine acts to toll the statute of limitations where a plaintiff can "demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant."  *West v. Philadelphia Electric Co.*, 45 F.3d 744, 754 (3d. Cir. 1995) (citing *Bronze Shields Inc. v. New Jersey Dept. of Civil Service*, 667 F.2d 1074, 1081 (3d Cir. 1981)). The theory relies upon the fact that sometimes it is "appropriate to 'measure[] the running time of the required time period from the *last* occurrence of the discrimination and not from the first occurrence.'"  *Id.* (emphasis added) (quoting *Bronze Shields Inc.,* 667 F.2d at 1081).  There are two basic requirements in the initial continuing violation analysis.  First, Plaintiffs must prove that

---

[14]    The parties have not supplied the Court with any law on whether ADA and RA claims are exempted from New Jersey's minority tolling statute, and I have not found any such exception in my initial research.  Thus, I follow the general rule that, in adopting New Jersey's statute of limitations with respect to Plaintiffs' ADA and RA claims, I also adopt New Jersey's tolling rules.  *See Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d at 422.

[15]    At a minimum, it appears Plaintiffs A.B. and Sh.B. are seeking compensatory and punitive damages for State Defendants' failure to provide necessary medical and rehabilitative care to Plaintiff S.B.  *See* Compl., Prayer for Relief, ¶¶ H & I.

at least one act occurred within the filing period. *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558 (1977). Second, Plaintiffs must establish that the discrimination they experienced was "more than just the occurrence of isolated or sporadic acts of intentional discrimination." *Jewett v. International Tel. and Tel. Corp.,* 653 F.2d 89, 91 (3d Cir. 1981). In distinguishing between whether the discrimination was intermittent or an on-going pattern, the Third Circuit adopted a three part approach: (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger a plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *Cowell v. Palmer Twp.,* 263 F.3d 286, 292 (3d Cir. 2001) (citing *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)).

In support of their continuing violation argument, Plaintiffs assert that they have alleged a pattern and practice of discrimination by State Defendants in that they failed to provide S.B. with a FAPE. Specifically, Plaintiffs rely on State Defendants' failure to provide S.B. with home instruction between October 2004 and March 2012. Plaintiffs also contend that all Defendants mislead Plaintiffs through fraudulent promising that S.B. would be provided home instruction, failing to send mail to Plaintiffs' correct home address, and misrepresenting an IEP.

In contrast, State Defendants do not focus their opposition on whether the alleged discriminatory acts constitute a continuing violation *per se* under the ADA or § 504. Rather, they contend that none of these acts support imposing liability on State

Defendant. I have already addressed these arguments in connection with the Rule 12(b)(6) failure to state a claim portion of their motion, and thus need not repeat them here.

In sum, it appears that any claim raised by S.B. himself for violations of the ADA and § 504 are not time-barred because New Jersey tolls the statute of limitations for minors, and thus it would not be necessary to consider the continuing violation doctrine with respect to S.B.'s claims. I note, however, that depending on how Plaintiffs A.B. and Sh.B.'s independent claims may be repleaded, it may be difficult for Plaintiffs to establish that any alleged ADA and § 504 violation by State Defendants can be tolled under the continuing violation doctrine because, at this juncture, it does not appear that there was "more than just the occurrence of isolated or sporadic acts of intentional discrimination" by these Defendants. *See Jewett v. International Tel. and Tel. Corp.,* 653 F.2d at 91.

**CONCLUSION**

For the reasons set forth above, Count One and Counts Four through Seven are voluntarily dismissed against State Defendants only. Furthermore, Counts Two and Three are dismissed, without prejudice, as to State Defendants for failure to state a claim upon which relief may be granted.


Date: November 25, 2013                /s/ Freda L. Wolfson       
                                        Hon. Freda L. Wolfson, U.S.D.J.