NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| S.B., through his parents A.B. and Sh.B., A.B., individually, and Sh.B., Individually, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 13-0949 (FLW)(LHG) |
| v. | : : | OPINION |
| TRENTON BOARD OF EDUCATION, NEW JERSEY DEPARTMENT OF EDUCATION, and NEW JERSEY DEPARTMENT OF HEALTH | : : : : : : | |
| Defendants. | : : | |

This action arises out of a three-count Amended Complaint filed by Plaintiffs S.B., through his parents A.B. and Sh.B, as well as A.B. and Sh.B individually (collectively, "Plaintiffs"), against three defendants: Trenton Board of Education ("BOE"), New Jersey Department of Education ("DOE") and New Jersey Department of Health ("DOH"). The Amended Complaint alleges violations of: (Count One) Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132, et seq.; (Count Two) § 504 of the Rehabilitation Act of 1973 ("§ 504" or the "RA"), 29 U.S.C. § 784; and (Count Three) the New Jersey Special Education Statute, N.J.S.A. 18A:46-1, et seq.[1] Defendants New Jersey

---

[1] This Court has federal question subject matter jurisdiction over the federal law claims and supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States"); 28 U.S.C. § 1367.

1

Department of Education and New Jersey Department of Health (collectively, "State Defendants") filed a motion to dismiss the Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and/or failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). On August 4, 2014, Defendant Trenton Board of Education ("BOE"), was dismissed from the case by consent and without prejudice. For the reasons that follow, State Defendants' motion to dismiss is granted.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are unchanged from the previous decision in this case, S.B. v. Trenton Sch. Dist., Civ. No. 13-949, 2013 U.S. Dist. LEXIS 167073 (D.N.J. Nov. 25, 2013). However, since that decision, Plaintiffs have filed an Amended Complaint, which, for the purpose of this motion, we assume to be true unless otherwise noted. S.B. is a fourteen-year-old boy who resides with his parents in the City of Trenton, New Jersey. Am. Compl. ¶¶ 5–7. S.B. was diagnosed at birth with Proteus Syndrome, a congenital disorder that causes vascular malformations, lymphedema, and hypertrophy of his trunk, hands, fingers, arms, and feet. Id. at ¶ 31. He also suffers from severe asthma. Id. at ¶ 32. S.B. suffers from chronic pain from the hemotomas caused by the vascular malformations, the drainage from the lymphedema, and the extra weight cause by his enlarged extremities and trunk, and breathing difficulties from his asthma. Because of these disabilities, S.B. has been receiving Supplemental Security Income benefits and Medicaid since approximately his first birthday. Id. at ¶ 38.

S.B.'s disabilities entitled him to a variety of social and educational services under both State and Federal law. Id. at ¶¶ 14–30. Specifically, The New Jersey Department of Health, in conjunction with the New Jersey Department of Education, is required to provide disabled

children, like S.B., with early intervention services ("EIS") from birth to age three, id. at ¶ 21, and transitional services prior to preschool and kindergarten, id. at ¶ 26. However, his parents were never contacted or informed of these services, and S.B. received no EIS or transitional services. Id. at ¶¶ 42–45. Instead, the first contact between Plaintiffs and any of the Defendants occurred in July of 2004, when Sh.B., S.B.'s mother, contacted the Trenton Board of Education to inquire about registering S.B. for kindergarten. Id. at ¶ 46.

Following that initial contact, the Complaint alleges a complete failure on the part of BOE to provide S.B. with an education. The Court has already described these facts in detail in the previous opinion in this case, S.B. v. Trenton Sch. Dist., No. 13-949, 2013 U.S. Dist. LEXIS 167073, *4–*11 (D.N.J. Nov. 25, 2013), and they need not be repeated. It is sufficient to note that between October 2004 and March 2012, S.B. received almost no educational services, despite numerous attempts from Plaintiffs to inquire about his educational placement with the BOE. Am. Compl. at ¶¶ 53–87. It was not until an intervention by the New Jersey Division of Family and Youth Services in 2011 that the BOE provided S.B. with the educational services to which he is entitled. Id. at ¶¶79–81. In March 2012, S.B. began receiving Home Instruction ("H.I.") services, and in December 2012, an Individual Education Program was signed, authorizing S.B. to attend Kingsway Learning Center beginning in January 2013. Id. at ¶¶ 87, 96.

On February 15, 2013, Plaintiffs filed a seven-count Complaint against the Trenton Board of Education, the New Jersey Department of Education, and the New Jersey Department of Health, alleging violations of the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400, et. seq., Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132, et seq., § 504 of the Rehabilitation Act of 1973 ("§ 504" or the "RA"), 29 U.S.C. § 784, the Fourteenth Amendment of the United States Constitution, through 42 U.S.C. § 1983, as well

3

as several New Jersey constitutional and statutory claims. State Defendants filed a motion to dismiss. Following that motion, Plaintiffs voluntarily dismissed Count One, violation of the IDEA, Count Four, violation of the Fourteenth Amendment, and the New Jersey state constitution and statutory claims in Counts Five through Seven. The Court then granted State Defendants' motion to dismiss Counts Two and Three, which alleged violations of the ADA and § 504, respectively, for failure to state a claim upon which relief may be granted. S.B., No. 13-949, at *35.

On February 4, 2014, Plaintiffs filed a three-count Amended Complaint against BOE, DOE, and DOH, alleging that all three Defendants violated provisions of Title II of the ADA(Count One); § 504 (Count Two); and N.J.S.A. 18A:46-1 et seq. (Count Three). Underlying all three claims against State Defendants, are Plaintiffs' allegations that DOH and DOE failed to identify S.B. as a child with a disability, Am. Compl. at ¶ 104, that they failed to provide plaintiffs with EIS, id. at ¶¶ 104–108, 120-122, and that DOE failed to monitor the DOH and the BOE, resulting in Plaintiffs failing to receive the services to which they were entitled as a result of S.B.'s disabilities, id. at ¶¶ 111, 125.

## II. STANDARD OF REVIEW

In the instant matter, State Defendants move to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6), based on the statute of limitations. When a Rule 12 motion "is based on more than one ground, the court should consider the 12(b)(1) challenge first, because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses

and objections become moot." In re Corestates Trust Fee Litig., 837 F. Supp. 104, 105 (E.D. Pa. 1993).

### A. Rule 12(b)(1)

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). There is no presumption of truthfulness that attaches to the allegations of the complaint when determining a challenge to the court's subject matter jurisdiction. Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Once a 12(b)(1) challenge is raised, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. See McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006). A Rule 12(b)(1) motion to dismiss is treated as either a "facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." Id. Under a factual attack, however, "the challenge is to the actual alleged jurisdictional facts." Liafom, LLC. v. Big Fresh Pictures, Civ. No. 10-0606, 2011 U.S. Dist. LEXIS 95251, 2011 WL 3841323 (D.N.J. Aug. 24, 2011). In the instant matter, State Defendants do not challenge the alleged jurisdictional facts. Rather, State Defendants argue that this Court lacks subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies and because State Defendants invoke the Eleventh Amendment, see Def. Br., 11, challenging the legal sufficiency of the claim. Thus, State Defendants have launched a facial attack, and the Court must examine the allegations of the complaint in the light most favorable to Plaintiffs.

### B. Rule 12(b)(6)

5

Under Rule 12(b)(6), a court may dismiss a claim for failing to state a basis upon which relief can be granted. In deciding a Rule 12(b)(6) motion, "courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). However, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although a statute of limitations question is an affirmative defense which is normally raised under Rule 8(c), the statute of limitations may be raised in a Rule 12(b)(6) motion "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

### III. DISCUSSION

#### A. Administrative Exhaustion

State Defendants argue that the Court lacks jurisdiction over Plaintiffs' ADA and § 504 claims because Plaintiffs' did not exhaust their administrative remedies under the IDEA—which State Defendants claim is required here, despite the fact that Plaintiffs bring only non-IDEA claims. Def Brief at 12. Under the IDEA, the right to a "free and appropriate public education" is safeguarded by elaborate procedural mechanisms, including the right to a due process hearing before an administrative official. Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) (citing 20 U.S.C. § 1412; 20 U.S.C. § 1415(b)). Parties who are "aggrieved by the findings and decision" of a due process hearing may bring a civil action in court, and the court grants such relief as may be appropriate." Id. "[I]tis clear from the language of the Act that

Congress intended plaintiffs to complete the administrative process before resorting to federal court." Id. Exhaustion is required before the statute grants subject matter jurisdiction to the district court. Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, ___, 2014 U.S. Dist. LEXIS 13641 at *12–*13 (3d Cir. 2014)

Administrative exhaustion under the IDEA is required even in non-IDEA claims, "where the plaintiff seeks relief that can be obtained under the IDEA." Id. Section 1415(l) expressly provides a rule of construction, which states that:

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101-12213], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791-794f], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the [IDEA administrative process] shall be exhausted to the same extent as would be required had the action been brought under this subchapter
>
> [Id. at *13–*14 (quoting 20 U.S.C. § 1415(l)).]

"This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—e.g., section 1983, section 504 of the Rehabilitation Act, or the ADA." Id. at *14 (internal quotation marks and citation omitted). In order to determine whether exhaustion is required, the "inquiry is whether the claim could have been remedied by the IDEA's administrative process." Id. at *15. That is, claims asserted under § 504 or the ADA will require exhaustion, "if they seek relief that is available under the IDEA." Id.

In Batchelor, the plaintiffs alleged that the school district retaliated against a student and his mother when they advocated for the student's right to a free and appropriate public education ("FAPE"). Id. at *18. The plaintiffs asserted three claims: retaliation and failure to provide a

7

FAPE under the IDEA; retaliation in violation of §504; and retaliation in violation of the ADA. Id. at *8. As in this case, the plaintiffs argued that they need not have exhausted their administrative remedies for their § 504 and ADA claims. Examining the plain language of the statute, which "affords parents of a disabled child the opportunity to present a complaint 'with respect to *any* matter *relating* to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child,'" id. at *18 (quoting 20 U.S.C. § 1415(b)(6)(A)), the Third Circuit noted that "there is a logical path to be drawn from the Appellants' claims of retaliation to the District's failure to provide, and Ms. Batchelor's effort to obtain for, Ryan 'a free appropriate public education.'" Id. at *21. The Circuit therefore held that the plaintiff's "retaliation claims asserted under Section 504 of the Rehabilitation Act and ADA 'relate unmistakably' to the provision of a FAPE to Ryan, and are thus subject to the IDEA's exhaustion requirement." Id. at *19.

In this case, as in Batchelor, Plaintiffs' claims "relate unmistakably" to the provision of a FAPE to S.B., and are subject to IDEA's exhaustion requirement. Plaintiffs' claims explicitly arise out of alleged violations of the IDEA requirements, including failure to locate and evaluate S.B., and the failure to provide EIS. See Am. Compl. at ¶¶ 15, 42–43. Under the plain language of the IDEA statute, therefore, Plaintiffs' claims relate to the IDEA, and Plaintiffs are required to exhaust their administrative remedies. See Batchelor, 759 F.3d at ___, 2014 U.S. Dist. LEXIS at *18–19.

Plaintiffs assert, however, that exhaustion is not required. Plaintiffs claim that exhaustion would be futile because the Defendants have agreed to provide S.B. with "all necessary related services" going forward. Pl. Brief at 22. Thus, Plaintiffs argue, the only possible remedy is

8

monetary damages, which is not available under the IDEA. Pl. Brief at 26. Therefore, according to Plaintiffs, their claims do not require administrative exhaustion. Id.

Plaintiffs are correct that administrative exhaustion is not required where "exhaustion would be futile or inadequate," "where the issue presented is purely a legal question," or "where the administrative agency cannot grant relief." Komninos, 13 F.3d at 778 (internal quotation marks and citations omitted). Plaintiffs are also correct that compensatory and punitive damages are not available under the IDEA. Batchelor, 759 F.3d at ___, 2014 U.S. Dist. LEXIS at *24. However, "the District Court is not constrained in the relief it is authorized to grant by the remedies sought in the [Plaintiff's] Complaint. On the contrary, the nature of Appellants' claims and the governing law determine the relief, regardless of Appellants' demands." Id. at *25 (citing Fed. R. Civ. P. 54(c)).

Thus, in Batchelor, the Third Circuit denied the plaintiffs' claims that exhaustion was not required because plaintiffs sought monetary damages. Noting that "'the theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply,'" the panel held that "parents 'cannot ignore remedies available under the IDEA and insist on those of their own devising; under the IDEA, educational professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls.'" Id. at *26 (quoting Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 992 (7th Cir. 1996)). The panel also found that "even though a monetary award is not available to Appellants during the IDEA administrative process as compensatory and punitive damages, such an award may nevertheless be granted as reimbursement for certain expenses incurred." Id. at *28. Thus, where "both the genesis and the manifestations of the problems are educational," the appropriate route is through the IDEA, which "offers comprehensive

educational solutions . . . to directly address educational harms," including compensatory education, "and, in addition, provides reimbursement for certain financial losses that occur as a result of the educational harms." Id. at *30 (internal quotation marks and citations omitted).

Like the Third Circuit, both the Second and the Seventh Circuits have found administrative exhaustion necessary in cases where plaintiffs sued for damages under the ADA and § 504, but did not bring IDEA claims. Charlie F., 98 F.3d at 992; Polera v. Bd. of Educ., 288 F.3d 478 (2d Cir. 2002). The Second Circuit reasoned that exhaustion was necessary, even though no claims were brought under the IDEA, because "the IDEA is intended to remedy precisely the sort of claim made by [the plaintiff]: that a school district failed to provide her with appropriate educational services." Polera, 288 F.3d at 488. "The fact that [the plaintiff] seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA." Id. Similarly, the Seventh Circuit held that "the [IDEA] statute speaks of available relief, and what relief is 'available' does not necessarily depend on what the aggrieved party wants." Charlie F., 98 F.3d at 991.

Although Plaintiffs are seeking monetary damages, "both the genesis and the manifestations of the problems are educational." See Batchelor, 759 F.3d at ___, 2014 U.S. Dist. LEXIS at *30. S.B. received almost no educational services for many years. Am. Compl. at ¶ 80. As of March 2012, his academic skills were at pre-kindergarten levels or below. Id. at ¶ 87. He suffered from cognitive impairment as a result of a lack of educational experiences. Id. at ¶ 94. The IDEA, therefore, is the most appropriate avenue for relief, as it provides comprehensive educational solutions, such as compensatory education. See Batchelor, 759 F.3d at ___, 2014 U.S. Dist. LEXIS at *30. Although Plaintiffs seek relief not available under the IDEA, because their complaints stem from that statute, exhaustion is still required. To the extent that Plaintiffs'

10

claims under the ADA and § 504, Counts One and Two of the Amended Complaint, are not barred by the statute of limitations, they are dismissed without prejudice for lack of subject matter jurisdiction.

### B. Statute of Limitations

Plaintiffs' claims are dismissed without prejudice on subject matter jurisdiction grounds, and therefore all other issues are moot. See In re Corestates, 837 F. Supp. at 105. However, Plaintiffs may choose to renew their claims following the exhaustion of administrative remedies. For the benefit of the parties, therefore, the Court will briefly address the question of whether any of Plaintiffs' federal claims are barred by a statute of limitations.

Section 504 and the ADA do not have their own statutes of limitations. In the Third Circuit, though, "the IDEA's two-year statute of limitations applies to claims made for education under § 504 of the Rehabilitation Act," P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 737 (3d Cir. 2009). "The IDEA and § 504 of the Rehabilitation Act do similar statutory work," and the Third Circuit thus found that "applying the state statute of limitations could frustrate federal policy" in the area of education for children with disabilities. Id. at 736. Like in P.P., where "[a]ll of the plaintiffs' § 504 claims [were] premised on their IDEA claims," id., Plaintiffs' claims under § 504 and the ADA are entirely premised on S.B.'s entitlement to services under the IDEA, Am. Compl. at ¶¶ 13–30. Accordingly, like in P.P., the IDEA provides the closest analogy for both the § 504 and the ADA claims, and supports the same federal policies. See P.P., 585 F.3d at 735. The IDEA's two year statute of limitations therefore applies to Plaintiffs' claims.

Recognizing that IDEA's two-year statute of limitations applies, Plaintiffs argue that their claims are subject to the continuing violation doctrine and are therefore not barred. Pl. Brief at

11

32. However, the IDEA statute of limitations is not subject to equitable tolling principles, including the continuing violation doctrine. D.K. v. Abington Sch. Dist., 696 F.3d 233, 248 (3d Cir. 2012). Plaintiffs also assert that their claims are timely under IDEA's statutory exception, which provides that the statute of limitations does not apply if the parent did not request a hearing due to "the local educational agency's withholding of information from the parent that was required under this part to be provided to the parent." 20 U.S.C. § 1415(f)(3)(D)(ii). However, "local educational agency" is defined in the IDEA as, generally, "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools . . . ." 20 U.S.C. § 1401(19)(a). In contrast, a "State educational agency" is defined as "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools." Id. at § 1491(32). Plaintiffs have not explained how State Defendants are local educational agencies instead of state educational agencies, although only local agencies are covered under the exception to the statute of limitations. Indeed, in the Amended Complaint, only the BOE is described as a "Local Educational Agency"; DOE is described as a "State Educational Agency," and DOH is not described as an educational agency at all. Am. Compl.¶¶ 8, 10–11. It is therefore unlikely that this statutory exception to the IDEA statute of limitations applies to Plaintiffs' claims against State Defendants.

Although the Court does not decide the motion on these grounds, it is likely that Plaintiffs' claims against State Defendants for alleged events occurring prior to February 2011 are barred under the IDEA two-year statute of limitations. Plaintiffs' allegations, however, include a claim that DOE failed to adequately oversee the BOE between 2005 and 2013, Am.

Comp. at ¶ 100. To the extent that such an allegation is sufficient to bring a cause of action against DOE, Plaintiffs' claim would survive the statute of limitations, though the claim would be limited to those violations which occurred within two years of the date the original Complaint was filed.

### C. State Law Claims

State Defendants also assert that Count Three of the Amended Complaint, which asserts violations of the New Jersey Special Education Statute, should be dismissed on Eleventh Amendment grounds, and that Plaintiffs cannot recover monetary damages for violations of New Jersey laws on education. The Court need not decide these issues. Both of Plaintiffs' claims under federal law are dismissed because of Plaintiffs' failure to exhaust their administrative remedies. The Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. See 28 U.S.C. § 1367(c)(3); Byrd v. Shannon, 715 F.3d 117, 128 (3d Cir. 2014) (upholding District Court's decision to decline supplemental jurisdiction over state law claims where all federal claims were dismissed).

## IV. CONCLUSION

For the reasons set forth above, State Defendants' Motion to Dismiss is granted, and all counts against State Defendants are dismissed, without prejudice.

Dated: October 9, 2014

                                                      /s/ Freda L. Wolfson
                                                    Freda L. Wolfson, U.S.D.J.